**BROWN, Adm'r, Office of Price Administration, v. HECHT CO.**

**Civil Action No. 17995.**

District Court of the United States for the District of Columbia.

Feb. 19, 1943.

David Ginsburg, Gen. Counsel, Office of Price Administration, Brunson MacChesney, Asst. Gen. Counsel, Fleming James, Jr., Chief, Trial Litigation Branch, George M. Austin, Trial Litigation Atty., and Charles Prettyman, all of Washington, D. C., for plaintiff.

Spencer Gordon and Charles A. Horsky, of Covington, Burling, Rublee, Acheson & Shorb, both of Washington, D. C., for defendant.

LETTS, Justice.

The complaint recites that in the judgment of the Price Administrator the defendant has engaged in actions and practices which constitute a violation of Section 4(a) of the Emergency Price Control Act of 1942, Pub.L. 421, 77th Congress 2nd Session, C. 26, hereinafter called the Act, 50 U.S.C.A.Appendix § 904(a) in that it has violated The General Maximum Price Regulation, as amended, hereinafter referred to as the Regulation, issued pursuant

to Section 2(a) of the Act, 50 U.S.C.A.Appendix § 902(a); and, therefore, pursuant to Section 205(a) of the Act, 50 U.S.C.A. Appendix § 925(a), the Price Administrator brings this action to enforce Section 4(a) of said Act and the Regulation.

The defendant is and has at all times mentioned herein been engaged in the sale and delivery of commodities in the retail mercantile business within the District of Columbia.

Pursuant to the provisions of Section 2 (a) of the Act, the Price Administrator published in the Federal Register The General Maximum Price Regulation, effective May 11, 1942 (7 F.R. 3153).

The General Maximum Price Regulation, insofar as the same is material here, provides in substance:

(a) That on and after the effective date of the Regulation no person shall sell or deliver any commodity at a price higher than the maximum price permitted by the Regulation (Section 1499.1).

(b) That the seller's maximum price for any commodity shall be the highest price charged by the seller in March, 1942, for the same or similar commodity (Section 1499.2).

(c) That the seller's maximum price for any commodity which cannot be determined as aforementioned (b) shall be determined by dividing the maximum price of the commodity by the replacement cost of the commodity, the percentage so obtained to be multiplied by the cost to him of the commodity being priced, and within 10 days after determining such maximum price the seller shall report said price to the Office of Price Administration upon a form duly filled out (Section 1499.3).

(d) Sellers of commodities subject to maximum prices shall preserve for examination all their existing records relating to the price which they charged for such commodities during March, 1942, and shall prepare on or before July 1, 1942, on the basis of all available information and records and thereafter keep for examination by any person a statement showing the highest price he charged during March, 1942, for those commodities sold and delivered or offered for sale or delivery during said month with an appropriate description or identification of each such commodity (Section 1499.11).

(e) Every person selling commodities, the maximum prices of which are set by the regulation, shall keep records showing as precisely as possible the basis on which he determined the maximum prices for those commodities (Section 1499.12).

(f) Every person offering to sell cost of living commodities at retail shall plainly mark in a manner visible to the purchaser the maximum price of such commodity and shall designate such price as the maximum or ceiling price (Section 1499.13).

Plaintiff says that the defendant company has violated the provisions of the General Maximum Price Regulation in the following particulars, to-wit:

(a) Defendant has failed, neglected and refused to use the standards and methods provided in Sections 1499.2 and 1499.3 of the Regulation to determine the maximum prices on commodities sold or delivered, or offered for sale or delivery, by it since May 18, 1942, which said maximum prices so determined were in excess of the maximum prices permitted by the Regulation.

(b) Defendant posted as its maximum prices on cost-of-living commodities offered for sale at retail by it after May 18, 1942, prices in excess of the maximum prices permitted by the Regulation (Section 1499.13).

(c) That since May 18, 1942, the defendant has sold or delivered, or offered for sale or delivery, commodities subject to The General Maximum Price Regulation at prices in excess of the maximum prices permitted by the Regulation (Section 1499.1).

(d) That the defendant did not on or before July 1, 1942, prepare and keep for examination by any person during ordinary business hours a statement in accordance with the Regulation (Section 1499.11 [b1 and b2]).

(e) That the defendant, though continuously engaged in the retail sale and delivery of commodities subject to the Regulation, has failed, neglected and refused to keep current records in conformity with the provisions of Section 1499.12 of said Regulation.

(f) That the defendant, though continuously engaged in the retail sale and delivery of cost-of-living commodities subject to the Regulation, did not on or before July 1, 1942, prepare and file with the appropriate War Price and Rationing Board a statement, relating to said cost-of-living commodities, in conformity with Section 1499.-13 of said Regulation.

(g) That the defendant, though continuously engaged in the retail sale and delivery of cost-of-living commodities subject to the Regulation, has failed, refused and neglected to keep its statement, relating to said cost-of-living commodities, up to date in conformity with the provisions of Section 1499.13 of said Regulation.

The Price Administrator seeks an injunction enjoining the defendant, its officers, agents, servants, employees, attorneys and all persons in active concert or participation with the defendant from:

(1) Selling, delivering, or offering for sale or delivery, any commodity in violation of The General Maximum Price Regulation as heretofore or hereafter amended and attempting or agreeing to anything in violation thereof or in violation of any regulation adopted pursuant to said Section 2(a) establishing maximum prices for said commodities; and

(2) Failing to keep complete and accurate records for inspection by the Office of Price Administration as required by said General Maximum Price Regulation as heretofore or hereafter amended, or by any other regulation adopted pursuant to Section 201(d) of the Act requiring the making or keeping of records or the making of reports.

The requirements of the act and regulation are recent. The defendant company found it necessary to learn and understand the requirements of the act and the regulation and to plan and organize for compliance from and after the effective date. The opportunity to so prepare was meagre and the time allowed for compliance was brief. Violations occurred but I do not consider them numerous in view of the difficulties involved in defendant's efforts to comply with the act and regulation. The defendant company is a large retail establishment organized in seventy-five departments under the direct supervision of buyers and merchandise managers; its volume of business is approximately twenty million dollars per year; its employees range in number between nineteen hundred and two thousand; its inventory of January 30, 1942, showed an excess of one million two hundred thousand items of merchandise; it had between January 1, 1942 and November 1, 1942, some fifty-four thousand and thirty transactions; a transaction includes any number of items bought by a customer at the time of the transaction.

The defendant took timely, positive and vigorous measures to understand the requirements and to meet them. It set up a capable organization with an unlimited expense account, charged with the duty of directing and supervising the personnel in an honest and sincere effort to comply in full measure with the requirements of the act and regulation.

Certain it is that violations occurred, but I do not find that the defendant company is chargeable with bad faith or of disloyal motive or purpose. It is not charged that the defendant was wilful in its violations and I think it appropriate to say that the element of wilfulness is entirely lacking in the evidence.

There is little if any disagreement as to the facts. I think the requirements as applied to the conduct of defendant's business were somewhat complicated. The defendant company made prompt and reasonable efforts to meet the requirements, and yet violations occurred. As I view the evidence such violations were the result of errors in interpreting the act and the regulation and in applying same to the transactions of the defendant company. Some of the violations may have resulted from negligence or carelessness but I find them innocent in character. No inference of intentional wrong doing may be drawn from them. It may be said to the credit of the defendant company that all errors and mistakes were promptly corrected as soon as they were discovered. It should also be added that the defendant has consistently improved its methods and its records to more fully meet the requirements of the act and regulation and to combat the difficulties which arise from the elements of human frailty.

The contending parties pitch their battle in the field of law. The act provides in part as follows: "Sec. 205 [§ 925]. (a) Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act (section 904 of this Appendix), he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary in-

junction, restraining order, or other order shall be granted without bond."

Counsel for plaintiff think the quoted language makes it mandatory for a court to issue an injunction when any violation is shown. Counsel for defendant insist that to so hold would tie the hands of the court, contrary to legislative intent. The legislative history of the act indicates that Congress intended and proposed that the courts shall have jurisdiction to issue whatever order to enforce compliance is proper in the circumstances of each particular case, foreseeing the exercise of full equitable jurisdiction to the end that justice shall be done.

I am sure that Congress did not anticipate one hundred per cent compliance. The act is a war measure and Congress rightfully expected conscientious and thoughtful cooperation of loyal citizens. Punishment is provided for wilful violations but where violations are not accompanied by the element of wilfulness the Price Administrator may ask and have the powers of the court as an aid in his administration of the act. If in such circumstances an injunction is asked the court is not deprived of its inherent powers by calling it a statutory injunction. The court in such case retains its implied powers, exercised in a sound discretion. Judicial discretion in such case does not mean judicial duty, as the Price Administrator contends. A court of equity may not be divested of jurisdiction by implication. The general equity powers of a court remain unimpaired except where a statute is so rigid as to inhibit the application of equitable doctrines. As generally understood judicial discretion includes the propriety of granting appropriate relief. All rules in equity must necessarily be sufficiently elastic to do justice in the case under consideration. Courts of equity are not inquisitorial but remedial.

In support of an application for statutory injunction it is not necessary to show that irreparable injury will result nor is it necessary to negative an adequate remedy at law. In other respects each case must be determined upon its facts and on equitable principles. In a case such as this an injunction should not issue unless thereby better compliance with law may be enforced. Such consideration is addressed to the sound discretion of the court. In such case, where violations of law were not flagrant and occurred despite reasonable effort to comply with the law the court should consider upon the facts of a particular case whether there is reason to anticipate further violations. In the legislation here involved it was not the purpose of Congress to police industry but to seek compliance for the public good and to recognize honest and true efforts to meet the requirements of the law. It is elementary that the purpose of an injunction is to deter rather than to punish. In the circumstances of this case I do not find that there is reason to apprehend future violations of the act and regulation. The attitude of the defendant company is not antagonistic but cooperative, and in my judgment an injunction would not be in the public interest. There is manifestation of good faith by the defendant, and I find no likelihood of further violation by it. I conclude that a just result requires a dismissal of plaintiff's complaint. There is abundant support in the authorities for the view which I have taken of the law which controls the case.[1]

Counsel for defendant will submit for settlement appropriate findings and a suitable form for final order.

[1] Fleming v. Lincoln Looseleaf Warehouse Company, D.C.E.D.Tenn.1942, 5 Wage Hour Reporter 615; Fleming v. Phipps, D.C.Md.1940, 35 F.Supp. 627; Fleming v. National Bank of Commerce, D.C.S.D.W.Va.1941, 41 F.Supp. 833; Fleming v. Kull, D.C.E.D.Tex.1941, 4 Wage Hour Reporter 411; Walling v. Woodruff, D.C.M.D.Ga.1942, 49 F.Supp. 52; Henderson v. Sonken-Galamba Corporation, D.C.W.D.Mo., June 1, 1942, 1 Price Control Cases, par. 50,901; Securities and Exchange Commission v. Lawson, D.C.Md.1935, 24 F.Supp. 360; Fleming v. Jacksonville Paper Company, 5 Cir., 1942, 128 F.2d 395; National Labor Relations Board v. Ford Motor Company, 5 Cir., 1941, 119 F.2d 326; Walling v. Builders' Veneer & Woodwork Co., D.C.E.D.Wis.1942, 45 F.Supp. 808; National Labor Relations Board v. Boss Mfg. Co., 7 Cir., 1939, 107 F.2d 574.

* No opinion for publication.